## UNITED STATES *v.* EWING & CLANCEY (No. 829).[1]

PARAGRAPHS 405 AND 421, TARIFF ACT OF 1909.

The proper rate of duty in this case is such an ad valorem rate as upon a computation based upon the value per pound of the artificial silk fabric it is found such fabric would pay under the compound rates provided for in paragraph 405. So, the intention of the law, that the artificial silk fabric shall not escape the duty imposed thereon under paragraph 405, is attained, the beads and other materials entering into the fringe pay a rate of duty not less than the 60 per cent ad valorem imposed thereon under paragraph 421, and at the same time such beads and other materials are not charged with the extreme penalty it is contended should be charged on them, they being found associated with the artificial silk fabric.—United States *v.* Vietor (1 Ct. Cust. Appls. 297; T. D. 31355), and Stein & Co. *v.* United States (2 Ct. Cust. Appls., 519; T. D. 32250).

### United States Court of Customs Appeals, May 8, 1912.

APPEAL from Board of United States General Appraisers, G. A. 7303 (T. D. 32045).

[Reversed.]

*William L. Wemple,* Assistant Attorney General (*Martin T. Baldwin,* special attorney, of counsel), for the United States.
*Curie, Smith & Maxwell* (*Thomas M. Lane* of counsel) for appellees.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

BARBER, Judge, delivered the opinion of the court:

The merchandise is fringes composed of glass beads, artificial silk, and cotton. The value of the beads before they are strung and attached to the fabric is 75 per cent of the total value of the materials entering into the fringes, and the value of the artificial silk and cotton are, respectively, about 15 and 10 per cent thereof. The fabric to which the beads are attached is a narrow, flat band or braid, and the record discloses that this band, unless the beads or some substitute therefor were attached thereto, would ordinarily not be designated as a fringe.

The merchandise was assessed for duty at the rate of 45 cents per pound and 65 per cent ad valorem under the provisions of para-

---

[1] Reported in T. D. 32624 (22 Treas. Dec., 1057).

graphs 421 and 405 of the tariff act of 1909. The material parts of these paragraphs are here inserted:

421. Beads and spangles of all kinds, including imitation pearl beads, not threaded or strung, or strung loosely on thread for facility in transportation only, thirty-five per centum ad valorem; fabrics, nets or nettings, laces, embroideries, galloons, wearing apparel, ornaments, trimmings, curtains, fringes, and other articles not specially provided for in this section, composed wholly or in chief value of beads or spangles made of glass or paste, gelatin, metal, or other material, but not in part of wool, sixty per centum ad valorem: *Provided*, That no article composed wholly or in chief value of beads or spangles made of glass, paste, gelatin, metal, or other material shall pay duty at a less rate than is imposed in any paragraph of this section upon such articles without such beads or spangles.

405. * * * Braids, laces, embroideries, galloons, neck rufflings, ruchings, fringes, trimmings, beltings, cords, tassels, ribbons, or other articles or fabrics composed wholly or in chief value of yarns, threads, filaments, or fibers of artificial or imitation silk or of artificial or imitation horsehair, by whatever * * * process made, forty-five cents per pound, and in addition thereto, sixty per centum ad valorem.

The importers protested the assessment, claiming the merchandise was only dutiable at the rate of 60 per cent ad valorem under paragraph 421. The Board of General Appraisers sustained the protest.

It is conceded that the rate of 60 per cent ad valorem upon the fringes in their completed state as imported results in an imposition greater in amount than would result if duty were taken only on the artificial silk fabric, which concededly would be dutiable, if imported separately under paragraph 405, at 45 cents per pound and 60 per cent ad valorem.

But it will be observed that this concession does not go far enough to mean that, if duty on the imported article were imposed at 60 per cent ad valorem only, it would result that such artificial silk fabric or braid would pay a duty of 45 cents per pound and 60 per cent ad valorem or its equivalent.

Manifestly it would not pay that duty, because the entire article pays only an ad valorem rate of 60 per cent. It is, however, true that, because the beads are attached to the fabric, the assessment made by the collector results that the beads themselves, if they may be separately considered from the fabric, pay a rate of duty higher than the 35 per cent or 60 per cent ad valorem imposed thereon, according to their condition and connection, if it exists, with other articles which is provided under paragraph 421.

Of course, if either the beads or the artificial silk fabric were imported separately, they would pay the respective duties imposed thereon under the applicable provisions above quoted. Neither, however, is so imported, and the question presented for consideration is whether the entire article is dutiable at the 60 per cent ad valorem rate under paragraph 421 or under the compound rate of 45 cents per pound and 60 per cent ad valorem under paragraph 405, because

the artificial silk fabric would bear the latter rate under paragraph 405, and also because the proviso to paragraph 421 requires that no articles composed wholly or in chief value of beads shall pay duty at a less rate than is imposed in any paragraph of this section upon such article without such beads, and if dutiable at such compound rate just how it shall be computed and applied.

The collector in assessing the merchandise computed duty at the rate of 45 cents per pound and 60 per cent ad valorem upon the whole weight and value of the merchandise.

Concededly it becomes necessary to refer to paragraph 405 to ascertain what duty would be assessed upon the artificial silk fabric were it separately imported, because of the proviso to paragraph 421. The importers, however, contend that the compound rate of 45 cents per pound and 60 per cent ad valorem which, by paragraph 405, is assessable on the artificial silk fabric or braid, should not be applied to the entire importation, because they say that the ad valorem rate of 60 per cent required to be assessed on the imported articles under paragraph 421 produces an amount of duty greater than the artificial silk fabric only would pay if imported separately under paragraph 405.

The Government contends that under the language of the proviso to paragraph 421 Congress has declared that an article composed in chief value of beads with some other material must pay duty at the rate imposed on such other material, if it is higher than 60 per cent ad valorem, and that, therefore, because the artificial silk fabric in this case is dutiable under the higher rate in paragraph 405, the entire importation must pay such higher rate.

It is well to consider briefly paragraph 421. It requires that fringes composed wholly or in chief value of beads shall pay 60 per cent ad valorem duty and it also provides that no article of which beads are the chief value shall pay duty "at a less rate than is imposed in any paragraph of this section" upon such article without such beads.

It would seem that this language was entirely explicit and wholly free of ambiguity. The declaration in the section, first, is that the duty shall be 60 per cent ad valorem—that is, at the rate of 60 per cent of its value, and in the proviso that the duty shall be paid at no lesser rate than is found elsewhere to be assessable upon the component material of less value than the beads. We think this clearly indicates that Congress had in mind that the beads might be attached to some other product, like the artificial silk in this case, the combination resulting in a fringe, as in this case, which artificial silk fabric might be dutiable at a higher rate than the 60 per cent ad valorem provided for the completed article, and that thereby such component material not of chief value would escape its proper duty, because the beads were attached thereto, unless a proviso was added

to the section, and that it was the purpose of the proviso to compel such component article of less value nevertheless to pay the higher rate, and also to require the new article of which it was a part to pay such higher rate.

It was not intended to permit the artificial silk fabric or braid, by reason of its being combined with articles paying a lesser rate of duty, to thereby escape the higher rate.

Under paragraph 405 this artificial silk fabric or braid clearly takes the rate of duty therein prescribed. If the contention of the importers be sustained, an artificial silk fabric combined with beads, the fabric being the article of chief value, would be dutiable under paragraph 405, while if it were not the component article of chief value it would be dutiable at a lower rate. In other words, two identical artificial silk fabrics would be dutiable at differing rates, according as the value of the beads thereto attached was greater or less than the value of the fabric itself. We do not think the statute should be given this interpretation. On the other hand, under the Government's contention the beads, which are the component material of chief value, take the higher compound rate provided for the artificial silk fabric; that is, the article of which these beads are the component material of chief value, by reason of their being combined with the high-duty-paying artificial silk, take the duty applicable thereto, namely, 45 cents per pound and 60 per cent ad valorem. But we think that neither of these contentions represents the true rule to be applied in construing the statutes under consideration.

The proviso to paragraph 421, that no article of which the beads are the chief value shall pay duty at a less rate than is imposed in any paragraph upon that article without the beads, seems irresistibly to lead to the conclusion that when such a combination exists the first thing to be determined is what is the rate of duty that such other article would be required to pay provided it had been imported without the beads attached, and when it has been ascertained, to compare the same with the 60 per cent ad valorem rate provided for in the body of paragraph 421; and if it be found to be less than 60 per cent ad valorem the law is satisfied and the duty thereon shall be such 60 per cent ad valorem; but if it is found to be more, such greater rate is the rate to be assessed upon the imported article instead of the 60 per cent ad valorem rate.

To make this comparison it is necessary to consider the article to which the beads are attached as stripped thereof. Now, under paragraph 405, the artificial silk fabric or braid pays a duty of 45 cents per pound and 60 per cent ad valorem. What the equivalent ad valorem duty would be which would equal such specific and ad valorem rate we are unable to ascertain, because the value of the goods is not stated in this case, but it manifestly is more than 60 per

cent ad valorem, and the exact rate thereof can be computed by the collector in the following manner, and perhaps in other ways: Assume the value of 1 pound of the artificial silk fabric to be $5; this pays a specific duty of 45 cents, which is the equivalent of 9 per cent ad valorem; to this add the 60 per cent ad valorem which paragraph 405 also assesses and we have the result of 69 per cent ad valorem, which is the ad valorem rate this artificial silk fabric pays under the provisions of paragraph 405, and which not only it, but the beads and the cotton attached thereto to make the fringes, must pay under the provisions of paragraph 421.

It is said, and the board evidently were of that opinion, that the case of United States *v.* Vietor (1 Ct. Cust. Appls., 297; T. D. 31355) is complete authority for sustaining the importers' contention. In that case the question was whether an appliquéd silk fabric was dutiable at 60 per cent ad valorem under paragraph 402 of the act of 1909, or whether the proviso thereto that appliquéd fabrics "shall pay no less rate of duty" than that imposed upon the fabric if not so appliquéd, it being conceded that the basic fabric was dutiable at the specific rate per pound under paragraph 399, required duty to be assessed under the latter paragraph.

The appliquéd importation had been assessed at the specific duty per pound which the basic fabric, if imported stripped of the appliqué, would have paid, and which resulted in an ad valorem rate of some 166 per cent on the importation. In view of previous litigation upon the subject in that case referred to, and which it is unnecessary to discuss here, and also in view of the prohibitive rate which would obtain if the collector's assessment was upheld, which it was not considered Congress could have intended to impose, we held in effect that, to carry out the congressional intent, paragraph 399 should be referred to for the purpose of ascertaining the amount of the specific duty which the basic fabric should pay thereunder from which its ad valorem rate of duty could be computed, and, if the 60 per cent ad valorem rate of paragraph 402 was not less than the specific rate under paragraph 399, reduced to an ad valorem basis, then the rate under such last-named paragraph would not be applicable, and it appearing in that case that the rate of 60 per cent ad valorem under paragraph 402 was not less than the specific rate which would have been imposed on the basic fabric under paragraph 399, when reduced to an ad valorem basis, we held that the rate under paragraph 402 was applicable.

So in this case, if the rate of 60 per cent ad valorem under paragraph 421 was equal to or greater than the compound rate imposed on the artificial silk fabric under paragraph 405, when reduced to an ad valorem basis, the last-named paragraph would have no application except for the purposes of comparison. Such, however, is not the case;

and it follows that the proper rate of duty to be assessed on the merchandise in this case is such an ad valorem rate as upon a computation based upon the value per pound of the artificial silk fabric, it is found such fabric would pay under the compound rates provided for in paragraph 405. In this manner the manifest intention of the law that the artificial silk fabric shall not escape the duty imposed thereon under paragraph 405 is attained, the beads and other material entering into the fringe pay a rate of duty not less than the 60 per cent ad valorem imposed thereon under paragraph 421, while such beads and other material do not pay the extreme penalty for being found associated with the artificial silk fabric which the Government's contention would visit upon them.

We think this conclusion is exactly in accord with that reached in the Vietor case. In other words, the precise question decided there was that reference should be had to paragraph 399, which imposed duty upon the silk fabric before it had received the appliqué for the purpose of ascertaining by computation what was the ad valorem rate of duty which such a fabric if imported without the appliqué would pay thereunder and that upon such reference, it being found that the equivalent ad valorem rate of such specific duty was not less than the ad valorem rate which the same fabric would pay under paragraph 402, there was no call for further application of the provisions of paragraph 399.

There are, it is true, isolated expressions in that opinion which, taken literally and without regard to the precise question in issue, are not entirely apposite to the point actually decided in the case, yet we have no question but the true rule to be deduced from that decision is that which we apply to the case at bar.

Nor is the case of Stein & Co. v. United States (2 Ct. Cust. Appls., 519; T. D. 32250) in conflict with the conclusion we reach here. There the question was whether handkerchiefs, not composed wholly or in chief value of lace made on the Lever or Gothrough machine, should pay duty at 70 per cent ad valorem under paragraph 350, which was construed in connection with paragraph 349. The proviso to paragraph 349, which relates to handkerchiefs and other articles made wholly or in part of lace, is that no article composed wholly or in chief value of one or more of the materials or goods specified in that paragraph shall pay a less rate of duty than the highest rate imposed by this section upon any of the materials of which the same is composed. Paragraph 350 provides that laces made on the Lever or Gothrough machine shall pay duty at the rate of 70 per cent ad valorem, and contains a proviso that no handkerchiefs or other articles composed wholly or in chief value of certain articles made of such lace shall pay a less rate of duty than that imposed upon the articles or materials of which they are composed.

The handkerchiefs were cotton upon which were laces made by the Lever or Gothrough machine which were not the chief value of the handkerchiefs, and it was held, in view of the proviso to paragraph 349 that, because there was Lever lace upon the handkerchiefs, the proviso to that paragraph made applicable to the handkerchiefs the 70 per cent ad valorem rate assessable upon the laces made on the Lever or Gothrough machine.

Restated, it was held that paragraph 350 mandatorily required that the articles named therein, when composed of Lever or Go-through lace, should be assessed at 70 per cent ad valorem and that the handkerchiefs, which were composed in part of such lace, were, under the proviso to paragraph 349, required to pay that rate because Lever or Gothrough lace was one of their component materials, the proviso to that paragraph declaring, as already stated, that articles dutiable thereunder should not pay a less rate of duty than the highest rate imposed upon *any. of the materials* of which the same is composed.

It will be noted that the Stein case does not involve the ascertainment of an ad valorem rate equivalent to the amount arising from the imposition of a specific rate. We are unable to discover a want of harmony in the principles that govern these two decisions.

There is no controverted question of fact in this case. The collector has, although invoking the proper paragraph for the assessment of duty, incorrectly construed the same, and the assessment has been reversed by the board, likewise upon an erroneous interpretation of the paragraphs involved.

The judgment of the Board of General Appraisers should therefore be *reversed* and the cause remanded with mandate that reliquidation be had in accordance with the views herein set forth.