### ALTMAN & Co. v. UNITED STATES (No. 1275).[1]

1. "MATERIALS" AND "GOODS."

"Materials" means that from which an article is made up. "Goods" has a broader signification and includes the material upon which some work has been performed, and applies so long as these retain their character of not being manufactured into an article.

2. PLAIN COTTON UNDERWEAR WITH LACE ADDED.

In the proviso to paragraph 349, tariff act of 1909, "goods" has no broader signification than as stated, and it was not there intended to include a completed article in terms provided for elsewhere. The plain cotton underwear with lace added thereto of the importation does not fall within the named proviso.

3. EMBROIDERED FABRICS.

Paragraph 349 provides not only for embroidered articles, but for fabrics embroidered in any manner by hand or machinery. The paragraph specifies the embroidered fabrics of the importation and as the completed article is in chief value of such fabric and has added the Lever or Gothrough lace, it comes directly within the terms of the proviso and is subject to the highest rate of duty.

United States Court of Customs Appeals, February 27, 1914.

APPEAL from Board of United States General Appraisers, G. A. 7502 (T. D. 33794.)

[Modified.]

*Brown & Gerry* for appellants.

*William L. Wemple*, Assistant Attorney General (*Martin T. Baldwin*, special attorney, on the brief), for the United States.

Before MONTGOMERY, SMITH, BARBER, DE VRIES, and MARTIN, Judges.

MONTGOMERY, Presiding Judge, delivered the opinion of the court:

The merchandise involved in this appeal consists of ladies' cotton undergarments composed in part of lace that has been made on the Lever or Gothrough machines. There are two distinct classes of articles, some of which are plain cotton undergarments with a trimming of lace, and some are made up of embroidered cotton cloth, with the lace added. In none of them is the Lever lace the component material of chief value. Duty was assessed on all the garments at the rate of 70 per cent ad valorem, which is the rate fixed in paragraph 350 for Lever lace. To reach this result resort was had to the first proviso in paragraph 349 of the tariff act of 1909. The Board of General Appraisers sustained the assessment as made and the importer appeals.

We think that the two classes of articles should be dealt with separately, and treating first of the plain cotton underwear to which lace has been added we find that a reference to three provisions of the act is essential. The two paragraphs relied upon by the Government are, so far as essential, paragraph 350, which reads as follows:

350. Laces, embroideries, edgings, insertings, galloons, flouncings, nets, nettings, trimmings, and veils, composed of cotton, silk, artificial silk, or other material (except

---

[1] Reported in T. D. 34251 (26 Treas. Dec., 413).

wool), made on the Lever or Gothrough machine, seventy per centum ad valorem: *Provided*, That no wearing apparel, handkerchiefs, or articles of any description, composed wholly or in chief value of any of the foregoing, shall pay a less rate of duty than that imposed upon the articles or the materials of which the same are composed.

And the provisions of paragraph 349, here quoted:

349. Laces, * * * and all other lace articles; handkerchiefs, napkins, wearing apparel, and all other articles made wholly or in part of lace or laces, or in imitation of lace; nets, nettings, veils, veilings, * * * embroideries, trimmings, braids, * * *; wearing apparel, handkerchiefs, and other articles or fabrics embroidered in any manner by hand or machinery, whether with a plain or fancy letter, initial, or monogram, or otherwise, or tamboured, appliquéd, or scalloped, * * *; all of the foregoing, composed wholly or in chief value of cotton, flax, or other vegetable fiber, * * *, and not elsewhere specially provided for in this section, sixty per centum ad valorem: *Provided*, That no article composed wholly or in chief value of one or more of the materials or goods specified in this paragraph, shall pay a less rate of duty than the highest rate imposed by this section upon any of the materials or goods of which the same is composed: * * *.

In connection with these paragraphs, reference should be had to paragraph 324, which imposes a duty of 50 per cent on—

Articles of wearing apparel of every description composed of cotton or other vegetable fiber, or of which cotton or other vegetable fiber is the component material of chief value, made up or manufactured, wholly or in part, by the * * * manufacturer, and not otherwise provided for.

It will be noticed that this paragraph aptly describes the merchandise in question and would be controlling but for the provisions of paragraph 349. The latter paragraph was evidently intended to fix a higher rate of duty upon such wearing apparel which has added to it or has a special line of work performed upon it, namely, when it is made in part of lace. The cotton wearing apparel is not *as such* provided for or *specified* in this latter paragraph. It had been previously specified and duty on it fixed. The purpose of paragraph 349 was, as stated above, to fix an added duty upon such wearing apparel when it had lace added rather than to specify or make provision for such articles as materials or goods. These articles had already passed beyond the stage of materials or goods from which articles are made, both in fact and in the tariff classification. Hence the fair inference is that when the Congress incorporated the first proviso to paragraph 349, by which it was provided that no *article* composed or in chief value of one or more of the materials or goods specified in the paragraph should pay a less rate of duty than the highest rate imposed by the section upon any of the materials or goods of which the same is composed, it intended thereby to provide that such an addition to the cotton wearing apparel as should make some other material or goods constitute its chief value should subject such improved article to the highest rate to which any such goods so added would be subject. But it is an equally fair inference that in the absence of such addition of material or goods to the article, exceeding

in value the article provided for and specified in paragraph 324, the rate fixed in the body of paragraph 349, based on the addition of lace, prevails.    This construction makes the provisions of the first proviso of paragraph 349 and those of the proviso to paragraph 350 consistent and harmonious.    It is clear enough that "materials" mean that from which an article is made up.    "Goods" has a broader signification and may and should ordinarily be construed to include the material upon which some work has been performed so long as they retain their character as goods not yet manufactured into an article, as, for instance, goods in the piece.    But placed as they are in this proviso in apposition to the word "articles," we think the word "goods" should not have a broader signification than this and was not intended to include a completed article which had been in terms provided for in another paragraph of the tariff act.    So that as to the importations which consist of plain cotton underwear with lace added thereto we hold they do not fall within the first proviso of paragraph 349.

A different view must be taken as to embroidered articles.    For here paragraph 349 provides not only for embroidered articles but for *fabrics* embroidered in any manner by hand or machinery.    It can not be said that the articles, although fully made up, which are composed of fabrics embroidered, fall without the proviso quoted, for such articles are still made up of materials or goods *specified* in the paragraph, to wit, embroidered fabrics.    So that the proviso must be held to have relation to embroidered underwear.    The component material of the article is an embroidered fabric, and as such fabric is specified in the paragraph.    It would follow that if the completed article is in chief value of such fabric, and has also added to it the Lever or Gothrough lace, it comes directly within the terms of the proviso as an article composed in chief value of one of the materials or goods specified in the paragraph, and is subjected to a rate of duty which is the highest rate imposed by the section upon any of the materials or goods of which the same is composed.

This was the ruling in Stein *v.* United States (2 Ct. Cust. Appls., 519; T. D. 32250).    It is contended by the Government that this case went further and is broad enough in its language to include any article to which lace has been added.    But if we turn to the case to ascertain just what was involved, we find it said that there are two classes of cases:

The first class comprises those in which the foundation material is a cotton embroidered linen handkerchief, to which has been added a cotton lace edging and cotton lace insertions made on the Lever or Gothrough machine.    *    *    *    In the second class the completed handkerchief is composed of an unembroidered linen fabric which has been amplified and ornamented by the addition thereto of a cotton lace edging made on the Lever or Gothrough machine and a cotton lace insertion made on the

Gratley machine. Here the Gratley insertion is the constituent of chief value, and the value of the unembroidered linen center is admittedly less than that of either of the other components.

It will be noted as to both of the articles there considered that the goods of which they were composed were specified in paragraph 349, namely, one as insertions, the other as embroideries, so that it was quite correct to say in that case, as we say in this case, of embroidered underwear, that the articles as finished were composed in chief value of one or more of the materials specified in paragraph 349. But this can not be said of the plain cotton underwear, as we have pointed out above.

It results that the order of the Board of General Appraisers should be modified and the protest *sustained* as it relates to plain cotton underwear with the lace added, and *overruled* as it relates to embroidered underwear. It is so ordered.